Good morning, everyone, and welcome to the Ninth Circuit. I appreciate the early start. For those of you who are flying out of PDX today, the baggage system is down, so good luck if you're checking. So with that, we have one case on calendar today, Detwiler v. Mid-Columbia. All the other cases have either been deferred or submitted. Mr. McReynolds, come on up. May I proceed? You may. Good morning, Your Honors, and may it please the Court, Matthew McReynolds on behalf of the plaintiff appellant, Sherry Detwiler. I'd like to reserve three minutes of my time for rebuttal. Very well. Affirming the decision below would depart from decades of this circuit's precedent, strongly protecting religious liberty and the free exercise in Title VII context. It would also bring this circuit into direct conflict with five circuits that have spoken to nearly identical issues within just the past year. The essence of the holding below, that prayer, seeking God's guidance, and searching one's scriptures is not religious enough to get past the Title VII prima facie threshold, cannot be sustained. And I'd like to point the Court most directly to your decision in the early 1980s in Callahan v. Woods where this Court explained in the free exercise context that religion and other philosophical and secular beliefs cannot be neatly compartmentalized. And we believe that that was overlooked by the district court here. I'd like to just briefly comment on ---- Can it really be as general, though, as saying, in this instance, my body is my temple and anything that is deleterious to me violates my religious beliefs? That's so general and so sort of attenuated, that's always going to get you past a motion to dismiss? Not always, Your Honor. And I would respectfully disagree that I think our client, in the exhibits that were submitted with her first amended complaint and with her second amended complaint, which began at page 93 of the excerpts of record, was more specific than that, began with, I am a Christian, and went through her daily practices of prayer and scripture reading. But I also think that it's really important to step back and acknowledge that the employer will still have the ability to contest her beliefs, which, by the way, it did not do during the accommodation and termination process itself. This is a post hoc rationalization. And you see that if you look at the exhibits that have been submitted, particularly page 96 of the record, page 102, it's all about the practicality of accommodation, which is, of course, uniquely suited for the discovery process and for the trier effect. So, no, I don't believe it will always. What more is there to present? Your client was given leave to amend, and she amended, and added, I understand, the prayer aspect to, I think, the pleading. But what more would discovery provide here? Discovery would be the employer's opportunity to probe her beliefs in a way that they did not do during the initial process. Again, it's a post hoc rationalization that we're dealing with here. But if I could briefly just touch on the six circuits that have spoken to this exact issue, I think the first circuit, the fourth circuit, the sixth, seventh, and eighth circuits have really well addressed, in very similar context, what is and is not required in Title VII. But the sixth circuit, in the Lucky case that we've noted in our supplemental authorities, noted that that client, that plaintiff, prayed, she sought God, she acted on her beliefs in a COVID vaccine-related context, and that was enough for Title VII. The seventh circuit is in agreement with that in the Passerella case, as well as others. The first circuit in the Bazinet case, in Thornton v. Ibsen, very well reasoned. The fourth circuit in Barnett, and several others. The only outlier is the third circuit. Well, is it fair to say, and I understand you're looking at appellate decisions and district decisions are not precedential, as I know very well, but isn't it fair to say that the bulk of district court opinions in the ninth circuit have gone the other way? I don't know about the bulk of them, Your Honor. There certainly have been several that have, and there have been quite a few that have not. And so if you look at where most of them trace their decision to, a lot of them base their decisions in some of the earlier decisions from Pennsylvania, the district courts in Pennsylvania, and the third circuit. And if you follow that reasoning all the way back, even within the third circuit, I don't think it stands up. It's not consistent with Wisconsin v. Yoder, Supreme Court's 1972 decision, which really was the genesis for a lot of it. It's not consistent with Africa v. Pennsylvania, which was the Third Circuit's 1981 decision. And I could explain that in a lot more detail if you'd like, but that's our position on that. So, counsel, getting back to one of the questions that Judge Seaborg asked at the beginning, Judge Rovner, in her dissent in the Seventh Circuit case, effectively said if the rule that the plaintiffs wanted in that case would apply here, basically anything would establish. So I have a quick hypothetical for you. So if someone says my body's my temple, mental health is very important to my body, and working three days a week really causes me a lot of stress, and so that is mental health issues, that body's my temple, therefore I have to be accommodated and I don't have to work three days a week. I only want to work one day a week. Is that correct under the line that your client is seeking here? Yes and no. Depending on how well that plaintiff were to articulate her beliefs, I think she could potentially get past the minimal burden that Bolden Harge from this court and others have said is the threshold for Title VII, but that's just to get past the prima facie. She would have real problems, I think, as many of these plaintiffs would, in the accommodation process itself. I think the employer would have a strong argument, most likely, that they would face an undue hardship. So you think that the concern that Judge Rovner raised could be dealt with post 12B6? I do, Your Honor, and I don't think we're riding on a blank slate here. I think the Title VII has set very broad parameters for what constitutes religion, and if you go back all the way to Supreme Court decisions like United States v. Seeger, which has influenced a lot of the later even Title VII decisions, you see exceedingly broad protection for religious freedom. That may conflict with what some of our policy choices would be, but it's the policy choice that Congress made, and I think the Seventh Circuit did a good job of reasoning that out in the Passerella case in particular. All right, you have about two minutes left. You said you would like to reserve? I would. And, Ms. Dodds, if we can give him three minutes. So we're going to give you the minute back because we asked you a lot of questions. Good morning, Your Honors, and may it please the Court. My name is Greg Lockwood, and I'm here for the appellees, Mid-Columbia Medical Center and Sherry McCall. The issue today before you is a narrow one. It's whether or not the district court correctly decided that an objection to using a nasal swab was properly classified as a personal preference or a medical scientific belief instead of a religious belief. We believe that the court did so correctly and that you should affirm. The pleading standards here is the key thing in this case. We don't have a lot of time, so can I? Do you think that the other circuit's decisions about vaccination where you're getting a shot are distinguishable, or you just think they're wrong? Both. I think that in general, when we're talking about the vaccination exemption, we're talking about generally objections to abortion directly tied to Christianity. Right, but my understanding was at least some of those were that it was being used, that they thought that the vaccine was created using aborted babies, and there was a factual dispute about whether that was true. In fact, if you look at some of the decisions in the district courts, they say you're wrong about that. Certainly, some of the defendants were saying you're just wrong about that. I didn't see how that's different because on one hand, you may have a right or wrong factual view about this underlying thing that ends up feeding into your religious view about the morality of abortion. Then here, you have somebody's right or wrong views about whether or not this is carcinogenic and bad for you that feeds into their religious views about doing bad things to their body. So it seems to me those two things seem pretty similar. And respectfully, Your Honor, I disagree with that because, again, those are situations in which the religion is deciding that abortion is bad and association with abortion is bad. Those plaintiffs pled that their objections were based on the abortion which directly conflicted with those religious beliefs. Here, that's not the case. Here, what we're talking about is a general statement that my body is a temple and that I can't defile it. Then, instead of going to scripture, we go to the science. We go to the NIH. We go to the FDA. So you say, I think, instead of my body is a temple, you say, I think abortion is morally wrong and have religious objections to abortion. I think this medicine was made using an abortion procedure. But that's a factual question. You could call it a scientific question. It's a question that one could argue is not itself religious. Whether or not it's actually factually true that it's made using abortion, aborted babies, is something that in theory you could verify and figure out. And so why is that since you have a religious objection that travels through a factual thing for a lot of these people's vaccination objection, why is that any different? Because, you know, the Iqbal Twombly standard still applies. You have to make a plausible belief, even under Bold and Harge. The plaintiff still has the duty to make a plausible belief that they have a religious belief, religious rather than secular, and that that belief conflicts with the religion. Now, testing is completely consistent with protecting your body, keeping it as a temple. She then has to go to science, and, therefore, her belief about the alleged harm is entirely derivative on the science that she cites. And if you look at the science that she actually cites, those articles and the links in her letter, they don't really say what she asserts that they say. And so that sort of calling the question fairly early in the process, the pleading stage, I mean, that is something that can be fleshed out and your argument may well prevail that it really is a scientific issue and not a religious one. But do we know that from the pleadings? In other words, aren't you sort of making some assumptions about what she's saying is the basis of her beliefs? Well, Your Honor, respectfully, I don't think that it's too early because she had at least eight times to properly frame this in terms of her religion. And each time the religious belief, and if you look at her own words in her religious accommodation request, as well as her complaint, it's about concern with my bodily harm. To determine the bodily harm, she has to go to science. My client does not dispute her. So, yeah, I think we all understand this sort of thing. The challenge here is, is your position then that any time you've got what you would characterize as a religious view and that religious view, you know, your religious view creates a framework by which you make a decision. And then you sort of plug that into a factual matrix, your belief about how the world works. You could call it scientific or whatever. And is your view that whenever you do that, then you do not have protection? Another way of putting it is if it's a mixture. Because you know what? You don't disagree, I don't think, if I remember reading your briefs, that there is a religious component to her beliefs here. You're not saying she's not being sincere about her religious views about the sanctity of her body and all that stuff. You're just saying, yeah, but her view that this is bad for her body is scientifically wrong and that's a scientific view. So it's kind of a two, it's secular and science. Is your view that any time that's the case that Title VII doesn't apply? Your Honor, we're going to talk about the facts of this case. And here her own belief goes to, is this bad for me? And then she's got to go to science. Our dispute is not with her religious belief. It's with her scientific belief. Yes, I'm trying to figure out what you're saying. If you're saying it's a specific order, one view and then the other follows, you could always switch them, right? You could say she starts with her most fundamental view is I shouldn't do bad things to my body because God says I shouldn't. That's religious. And then you ask yourself, how does that apply in this specific situation? So I don't know that the order matters. I don't think one is more fundamental than the other. It's just that let's just assume for a second that it just takes both. Like it's a religious view that's informed by what you would call a secular thing. And when that's the case, kind of putting aside the exact facts of this case, is your view that Title VII doesn't apply because it's traveling through, whether it's before or after, a secular understanding of how the world works? What we're talking about is where the actual conflict lies. You have to have that conflict as part of the pleading standard. And here the conflict relies on the decision about science. This is a decision that she's making based on her research into science, not Scripture. And she is making this determination based on scientific sites. No, I know. Listen to my question a second if you don't mind. I'm kind of conceding that for at least the sake of argument here. Let's assume for a second that a significant part of her decision-making is driven by something that's not religion. But you also agree that part of it is driven by something that's religion. What is your view of when you have a mixed thing like that? Is your view that if part of it is non-religious slash secular slash scientific, whatever label you want to put on it, then Title VII doesn't apply? Is that your argument? I'm trying to figure out. First, Your Honor, I think you should look to where the conflict is. And here the conflict is about whether these swabs are deleterious to the plaintiff's health. And I think that if she didn't have a religious view, that's just the way you're carrying it. If she didn't have a religious view that she shouldn't do bad things to her body, then there would be no conflict there either. You could characterize a conflict in being in either one of those two categories. I don't think that that's necessarily true because I think that there are situations where religions assert that certain things are deleterious to your body or you should not be doing certain things. It's explicit either from a faith leader or from— So that's just another way of saying as long as it's purely religious, as long as God told me don't get the swab and I'm not basing it on any view, then it's okay. But as soon as you have a partially religious and partially nonreligious, then now Title VII doesn't apply. It seems to me that's what your position is. I'm just trying to be clear if I'm misunderstanding some part of that. Your Honor, I believe it's a fact-specific inquiry based on what's alleged and what the religious belief is and whether it's actually a religious belief or a secular belief. That's element one. And then two, whether the conflict between the employer's policy is with the secular belief or the religious belief. And here, what we're talking about is a conflict on the secular belief. And again, this is an occupational health and safety standard promulgated by the States with tests that were so ever-present that they were sent to all of us in the mail by the Federal Government. This all goes into the Iqbal-Twombly standards of what's plausible. And your Honors can use case context, judicial experience, and common sense to determine what's plausible and where the dispute actually lies. And here, I just don't think that plaintiff met the mark. I think the slippery slope argument that— Can I ask you a quick one? I know we're out of time. What if a person was right and they had a very scientific view of something, but it turned out that scientific view was right mixed with a religious view like here. I shouldn't do bad things to my body. I think this thing's bad for me. Science says it's not. It turns out eggs are actually bad for you or good for you, whatever. Would that be protected under Title VII? So does it turn on whether or not, if you have a correct scientific understanding coupled with a religious view, is that protected by Title VII? So secular beliefs are typically not protected. This course defined them in Tayano as medical, economic, political, and social preferences. So your argument is if any part of it is secular that your decision-making travels through, then that makes it not protected by Title VII? Not necessarily. I think that it hinges on what the belief is and where the conflict is, and that's depending on what's actually alleged. Here, what we're talking about is her allegation that I'm concerned with my bodily harm. She even makes a statement in her accommodation request that because it might harm me, I have made the decision that I'm not going to get it. So it swings on that bodily harm thing, not the religious concern. And, again, just to go to the slippery slope thing real quick, because I understand that I'm running out of time, courts, especially in the Third Circuit, have been concerned about this slippery slope. The Third Circuit warned against district courts, excuse me, against a plaintiff using a religious claim as a blanket privilege and cloak religious significance with a secular belief. I know we don't have much, but the slippery slope thing, you go to hotels, I assume, right, with pools, and they always have those machines that sit beside the pool, right? When I was a kid, I was like, why do they have those machines? And I now understand because now I'm a judge, and with the ADA, they have those machines so that they don't get sued because they have to have those machines under the ADA. But I never see those machines being used at all, lower people that have disabilities in the pool. And there's a lot about the ADA that just seems to be, that I think it doesn't seem to make economic sense, but it's what the law requires, right? So I'm struggling a little bit to, if the argument is here, wow, this would just be really intrusive and require, if that's what the law requires, then how is that different than, say, the ADA that may require things that we may think policy-wise are just really intrusive and made the decision in a different place than we would want? Is it our job to fix that, or? Your Honor, it's a pleading standard case, so we've got to look at the specific facts. But I think you bring up the ADA in an interesting way because, actually, plaintiff, in this case, made an ADA claim as part of her religious accommodation request. That's at page ER 99 through 101. And in that, she expressed concerns about the nasal swabs causing, affecting her sinitis as well as nosebleeds, expressing other kind of physical concerns rather than, like, religious ones that should be entitled to protection under the rule. And that's all to say that employment laws in this country are part of a large framework, both state and federal, that protect all sorts of different things. So if you say that this isn't sufficient for a religious claim, which I think you should and which I think the circuit law supports, that doesn't keep her out of court. She can make an ADA claim. She can make an EEOC claim based on whistleblowing for warning of the hazards of these swabs. She could go to the FDA. She could go to OSHA or Oregon or federal to address her specific concerns with the bodily harm. And that's what makes this case different. And that's why this really isn't a religious claim. And she doesn't plead it as a religious claim. And that's among the reasons why you should affirm. And I'm glad to address any other questions, but I see that I'm over my time. All right. Thank you, counsel, very much. Mr. McReynolds, we're going to give you three minutes, okay? Thank you. So we've just heard quite a bit of speculation, and we've heard about slippery slopes. What we haven't heard is about statutory interpretation. And I think that's one of the key failings in the Third Circuit's analysis is that it really gets away from statutory interpretation. And what this Court noted all the way back in Heller v. Ebb Auto Co. And Third Circuit, you mean the McDowell case? Is that the case we're talking about? I do mean McDowell specifically. There's the Gatto case that my friends on the other side have brought forward as well. But, yes, I'm thinking of McDowell specifically. And so all the way back in Heller v. Ebb Auto Co., this Court emphasized, and ever since through Bold and Harge, through the Keene v. Sitting County of San Francisco cases more recently, has emphasized the broad reach of Title VII. That is a policy decision that Congress made. I would just like to point out one other thing, and that is that if the Court is looking for a narrower path, if you will, that may be narrower than, say, what the Seventh Circuit has laid out in Passarella, I think what my friends on the other side have brought out in their supplemental authorities with the most recent Sixth Circuit and Eighth Circuit cases is telling. And the Sixth Circuit, after they decided Lucky and Sturgill, they also decided the Kale case that my friends have mentioned. And the key distinction between there and here, which is the only case from those five circuits I'm aware of where they affirmed dismissal on a 12B, was that the plaintiff had identified that her body was at Temple and she rejected testing on that basis. And the Eighth Circuit looked at that and said, well, you've said this is an intrusion into your Temple, but what about saliva testing? How is that an intrusion into your Temple? And that's exactly what our client requested in this case, was saliva testing that would comport with their beliefs. Same thing in the other Sixth Circuit case that my friends brought forward, DeVore versus the University of Kentucky. That was one of the key distinctions. Another one was that, again, that plaintiff had been offered saliva testing as an alternative to swab testing, and she rejected it. If that had been offered to our client here, it would have satisfied her beliefs. But the employer had a reason why the saliva testing wouldn't be an alternative, because it took too long to get the results, wasn't it? That is a factual issue that's factually disputed. That is just a prime candidate for discovery and for exploration in the next stage of this case. In conclusion, I would urge the Court to consider the ramifications of going a very different direction than this Circuit has gone in the past. I would urge you to compare the well-reasoned opinions from the First, Fourth, Sixth, Seventh, and Eighth Circuits with the decisions of the Third Circuit and side with the majority of the Circuits on this. If there's nothing further else, thank you. Thank you, Counsel. Thanks to both of you for your briefing and argument in this very interesting case. It's been an interesting week. Judge Seaborg, Chief Judge Seaborg, thank you for stepping up to the plate and helping us out. Thank you. And we are adjourned. Thank you, everybody.
judges: OWENS, VANDYKE, Seeborg